ADELINE REALTY COMPANY *v.* MICHIGAN
BELL TELEPHONE COMPANY.

Landlord and Tenant—Rent—Recording of Deed—Settlement.
Plaintiff, transferee of property, was not entitled to collect rent from lessee for period following recording of deed to plaintiff until date plaintiff and lessee entered into a new lease, where the lessee had paid plaintiff's transferor and is not shown to have conspired with such transferor or had any intention of paying rent to wrong party and plaintiff knew of the lessee's relationship with the transferor and has previously effected a settlement with it with respect to the disputed rent (CL 1948, § 565.25).

Appeal from Oakland; Hartrick (George B.), J. Submitted October 14, 1958. (Docket No. 49, Calendar No. 47,454.) Decided January 12, 1959.

Assumpsit by Adeline Realty Co., a Michigan corporation, against Michigan Bell Telephone Company, a Michigan corporation, for rent money. Judgment for defendant. Plaintiff appeals. Affirmed.

*Murray & Murray (Henry C. Murray,* of counsel), for plaintiff.

*Robert L. Page (Richard G. Eubank,* of counsel), for defendant.

Kelly, J. Defendant, Michigan Bell Telephone Company, deeded property it owned in Royal Oak,

---

REFERENCES FOR POINTS IN HEADNOTES
32 Am Jur, Landlord and Tenant § 357 *et seq.*

Michigan, to Excel Investments, Inc., with the agreement that Excel would construct a building upon said premises and lease same to defendant.

During the course of construction, Excel Investments deeded the land to Humbert M. Mularoni and Adeline Mularoni, his wife. They deeded to the present plaintiff, Adeline Realty Company.

The plaintiff (Adeline Realty Company) is the name under which Mr. and Mrs. Mularoni did business, and Excel Investments, Inc., is the company under which V. Jarosz and Leonard Jarosz did business.

The relationship between defendant and Excel, from the outset, was well known to plaintiff, as is disclosed by the following from Mr. Mularoni's testimony:

"*Q.* You knew he (Jarosz) was building the building for the telephone company?

"*A.* Yes.

"*Q.* You knew the telephone company was then going to give him a lease on the building?

"*A.* Yes.

"*Q.* You knew the telephone company wouldn't take the building until it was completed?

"*A.* Yes.

"*Q.* You knew there was going to be some financing required in connection with the construction of this building?

"*A.* Well, that came as we went along. It took quite awhile, you know.

"*Q.* How was the financing handled?

"*A.* Well, they had a mortgage commitment.

"*Q.* Excel got a mortgage commitment?

"*A.* Yes, and in order to get the money I had to buy the property before he could get a mortgage and the balance would be on the building or something like that.   *   *   *

"*Q.* You were actually buying a 10-year lease, were you not?

"*A.* We were buying the lease, it was part of our agreement he had with the telephone company.

"*Q.* You were taking over Jarosz' interest in an agreement he had with the telephone company?

"*A.* Yes.

"*Q.* Did you have a written agreement on that?

"*A.* Yes, somebody has.

"*Q.* You don't know where it is?

"*A.* That is part of the papers right there. In other words before we gave the money they had to get the deed from the telephone company for the land and as far as I know there were additional moneys after the building was up so he could pay the money he owes against the building as far as he went."

Defendant went into possession and, believing it was dealing with Excel Investments, Inc., paid in excess of $7,000 rent to Excel for occupancy between August 20, 1954, and November, 1954. When defendant became advised of plaintiff's ownership it entered into a lease in November, 1954, with plaintiff. In regard to the only period of occupancy in dispute (August 20, 1954, to November 1, 1954) appellant admits "that there is no question but what the rent was paid by the telephone company, but it was paid to the wrong man. It was paid to the Excel Investment Company."

The trial court gave judgment of no cause for action, stating: "I think the plaintiff in this case, by virtue of the settlement with Excel Investment Company and Jarosz, as has been testified was taken into consideration, that the plaintiff is in no position to claim rent back of the date it executed the new lease. Therefore they are not entitled to collect any rent for the interim period."

The "settlement" the court refers to was testified to without contradiction by George W. Holland, escrow agent of the Abstract Title & Guaranty Company. He testified that in December, 1954, while acting as closing agent for the insurance company

that bought the mortgage from the First National Bank of Akron, he was one of 3 arbitrators selected to arbitrate "the interests of Mularoni and Jarosz;" that one of the questions submitted was Mularoni's claim that the $7,000 rent paid by defendant to Excel belonged to him; that other items such as prorating taxes and interest were submitted and considered; that considering the $7,000 item and all other matters the arbitrators agreed upon a distribution between Mularoni and Jarosz, which was accepted by Mularoni and Jarosz, and, pursuant to said agreement, the moneys were paid the next day.

Appellant calls to this Court's attention the provision of recorded notice as established by CL 1948, § 565.25 (Stat Ann 1953 Rev § 26.543) and, also, decisions of this Court holding that the recording of a deed is notice, and then appellant emphasizes the fact that the deeds exchanged between Excel Investments, Inc., and Mularoni, and Mularoni to Adeline Realty Company, placing title in plaintiff company, were recorded June 17, 1954, and that after said recording defendant paid rent to Excel.

Plaintiff was not a stranger to the title. There is no intimation that Michigan Bell conspired with Jarosz and/or Excel Investments, or had any intention or desire to pay rent to the wrong party.

The court did not err in deciding that plaintiff was not entitled to an additional rental payment of $7,000 from defendant in view of the undisputed testimony of plaintiff's knowledge of defendant's relationship with Excel and Jarosz from the outset and, also, because of the final adjustment of accounts between plaintiff, Excel Investments and Jarosz in regard to the disputed $7,000 rental payment.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.